WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

GORDON LOREY GRILZ,                )
                                   )      No. CIV 02-1294 PCT RCB (MS)
        Petitioner,                )
                                   )              O R D E R
             vs.                   )
                                   )
TERRY L. STEWART, et. al.,         )
                                   )
        Respondents.               )
_____    )

    This matter is before the Court on a Petition for Writ of
Habeas Corpus (doc. # 1) filed pursuant to 28 U.S.C. § 2254 on July
11, 2002 by Petitioner Gordon Lorey Grilz, currently incarcerated
at the Arizona State Prison in Florence, Arizona.  An answer (doc.
# 7) was filed on September 18, 2002, and Petitioner filed a timely
reply (doc. # 11) on October 25, 2002.  On March 25, 2005, the
Magistrate Judge issued a Report and Recommendation ("R&R") (doc. #
15) recommending that the Petition be denied and dismissed in its
entirety as time-barred under the one-year statute of limitations
established by the Anti-Terrorism and Effective Death Penalty Act
of 1996 ("AEDPA").  Petitioner filed timely objections to the R&R

1  (doc. # 23) and supplemental exhibits (doc. # 24) in support of

2  these objections.  Having reviewed the record, the R&R, and

3  Petitioner's objections and exhibits, the Court now rules.

4  **I.    BACKGROUND**

5       **A. Conviction and Direct Appeal**

6       On May 14, 1981, Petitioner was convicted in the Superior

7  Court of Arizona in Yavapai County on one count of first-degree

8  murder and one count of second-degree murder in connection with the

9  shooting deaths of his estranged wife, Linda Grilz, and her friend,

10 Kim Hopfinger.  See State v. Grilz, 136 Ariz. 450, 666 P.2d 1059,

11 1061 (1983).  Petitioner's defense at trial was based on insanity

12 induced by prolonged drug and alcohol abuse.  Id.

13      On direct appeal, Petitioner argued that certain crime scene

14 photographs and a tape recording of Linda Grilz's telephone call to

15 the Sheriff's Department should not have been admitted into

16 evidence, the jury instruction on insanity was improper and

17 unconstitutional, and the sentence for the second-degree murder was

18 improperly enhanced.  Id.  The Supreme Court of Arizona determined

19 that the challenged evidence was admissible and held that the jury

20 instructions, while having an improper tendency to confuse the

21 jury, were not unconstitutional.  Id. at 1062-68.  However, the

22 Court found that the sentence for the second degree murder

23 conviction was improperly enhanced.  Id. 1067-68.  On June 14,

24 1983, the court affirmed the convictions and the life sentence in

25 connection with the first-degree murder conviction, but remanded

26 for resentencing in connection with the second-degree murder

27 conviction.  Id. at 1061.

28      On remand, the trial court sentenced Petitioner to a fourteen-

1  year sentence for the second-degree murder conviction, to be served

2  consecutive to the life sentence for the first-degree murder

3  conviction.  See Answer (doc. # 7), Ex. C at 2.  The Arizona Court

4  of Appeals affirmed the new sentence.  Id. at 14.  On October 11,

5  1985, after the Supreme Court of Arizona had denied further review,

6  the Arizona Court of Appeals issued its mandate finalizing

7  Petitioner's convictions.  See Answer (doc. # 7), Ex. D, E.

8  **B. Post-Conviction Proceedings**

9  On September 30, 1996, seven months after the AEDPA went into

10  effect, Petitioner retained attorney David Braun for representation

11  in state post-conviction proceedings.[1]  Reply (doc. # 11), Ex. 3 ¶

12  3.  Braun's affidavit states that, on October 10, 1996, he obtained

13  a fully executed Notice of Post-Conviction Relief from Petitioner,

14  which he gave to his secretary on the same day to be mailed to the

15  Superior Court of Arizona in Yavapai County.  Id. ¶¶ 4, 5.  Thus,

16  Braun claims that by these actions he "caused [the Notice] to be

17  mailed."  Id. ¶ 8.  The state court has no record of such filing

18  and neither Petitioner nor counsel has submitted a copy of the

19  executed notice or a conformed copy of its filing.  See id. ¶¶ 6-8.

20  On October 29, 1998, Petitioner filed his second[2] Petition for

21  Post-Conviction Relief in the Superior Court of Arizona in Yavapai

22  _____

23  [1]  Although Braun's affidavit asserts his familiarity with the
   AEDPA's one-year statute of limitations as of October 10, 1996, see
24  Reply (doc. # 11), Ex. 3 ¶ 4, Petitioner contends that he never had
   knowledge of the same and that Braun never made him aware of the
25  limitations period.  See Objections (doc. # 23) at 8, 10; Errata
   (doc. # 24) at 3-4.

26  [2]  Petitioner's first Petition for Post-Conviction Relief was
27  filed on December 16, 1981, before his convictions had become final
   on direct review.  Answer (doc. # 7), Ex. A.  That petition was
28  denied on January 28, 1982.  Answer (doc. # 7), Ex. B.

County raising the following claims: (1) the 911 dispatcher's failure to send help in response to the first emergency call constituted newly discovered evidence of an intervening and superceding cause of death, (2) he received ineffective assistance of trial counsel for various reasons, (3) that appellate and post-conviction counsel were ineffective for failing to raise the ineffectiveness of trial counsel on direct review or in his first Petition for Post-Conviction Relief[3], (4) the trial court's refusal to provide supplemental instructions regarding premeditation violated his due process rights, and (4) the prosecution committed misconduct, in violation of his due process rights, by interfering with defense counsel's ability to call a witness.  Answer (doc. # 7), Ex. F. at 7-24.

One respect in which Petitioner contended he had received ineffective assistance from trial counsel was that counsel had decided not to call a crucial defense witness, Mary Ann Jordan, possibly as a result of collusion with the prosecutor.  Id. at 13-14, 23-24.  Petitioner expected that Jordan could have testified about the character of the victim, Kim Hopfinger, for pursuing married women.  Id.  At trial, counsel told Petitioner "that he and [the prosecutor] had discussed Jordan and that they had decided that she 'had been through enough,' [and] therefore he would not call her as a witness at trial."  Errata (doc. # 24) at 2 n.1.  On November 30, 1998, a private investigator hired by Petitioner's

---

[3] Although this claim is not asserted in his second Petition for Post-Conviction Relief, the trial court's extensive discussion of this claim suggests that it was properly brought to the court's attention some time before its ruling.  See Answer (doc. # 7), Ex. H at 2-6.

post-conviction counsel to investigate this claim discovered that the prosecutor had previously represented Jordan in an unrelated matter and thereafter maintained a personal relationship with her. See Errata (doc. # 24), Ex. 1 at 1, 4.

On August, 18, 2000, the court denied the petition and, on January 8, 2002, the Supreme Court of Arizona issued an order denying review.  Answer (doc. # 7), Ex. H at 1-6; Reply (doc. # 11), Ex. 1.

On July 11, 2002, Petitioner filed the present Petition for Writ of Habeas Corpus (doc. # 1) in this Court pursuant to 28 U.S.C. § 2254 setting forth the following grounds for relief:

> Ground One: His right to due process under the Fourteenth Amendment was violated because the trial judge's jury instruction improperly eviscerated the state's burden to prove him sane.

> Ground Two: Trial counsel was ineffective under the Sixth Amendment for failing to:

> a. object to the insanity jury instruction

> b. request a voluntariness hearing

> c. adequately and effectively argue for a change of venue

> d. subpoena crucial defense witnesses

> e. cross-examine state witnesses

> f. request a blood or urine test

> g. renew a Rule 11 motion to have Petitioner's competency to stand trial determined

> h. strike a juror for cause who knew a prosecution witness

> i. object to a deficient jury instruction on premeditation

> j. raise all available defenses; and

> k. seek a new trial based on a court employee making statements to the jury with the intent to influence.

> Ground Three: Appellate counsel was ineffective under the Sixth Amendment for failing to raise the above ineffective assistance of counsel claims in his first Petition for Post-Conviction Relief.

> Ground Four: The trial court erred in violation of his due process rights under the Fourteenth Amendment to provide the correct jury instruction on premeditation.

Pet. (doc. # 1) at 5-8.

## II.    STANDARD OF REVIEW

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under the law." Bell v. Cone, 535 U.S. 685, 693 (2002) (citing Williams v. Taylor, 529 U.S. 362, 403-04 (2000)).  Thus, a state prisoner is not entitled to federal habeas relief with respect to any federal claim that was adjudicated on the merits in state court proceedings unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); accord Campbell v. Rice, 302 F.3d 892, 896 (9th Cir. 2002).  To determine whether a state court decision is contrary to federal law, the district court must look to the state's last reasoned decision as the basis for its judgment. Campbell, 302 F.3d at 896.

Under the AEDPA's "new, highly deferential standard for evaluating state-court rulings," Lindh v. Murphy, 521 U.S. 320, 334

- 6 -

n.7 (1997), the district court is not permitted to make a <u>de novo</u>
determination of any federal claim adjudicated on the merits by the
state court.   <u>See</u> <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71 (2003),
<u>overruling</u> <u>Van Tran v. Lindsey</u>, 212 F.3d 1143, 1149 (9th Cir.
2000).   State court findings of fact are presumed to be correct
unless the petitioner rebuts the presumption with clear and
convincing evidence.   <u>See</u> 28 U.S.C. § 2254(e)(1); <u>Davis v.</u>
<u>Woodford</u>, 333 F.3d 982, 991 (9th Cir. 2003); <u>Zichko v. Idaho</u>, 247
F.3d 1015, 1019 (9th Cir. 2001); <u>Weaver v. Thompson</u>, 197 F.3d 359,
363 (9th Cir. 1999).

**III. DISCUSSION**

Because this case was filed after April 24, 1996, it is
governed by the AEDPA.   <u>Woodford v. Garceau</u>, 538 U.S. 202, 210
(2003); <u>Lindh</u>, 521 U.S. at 336.   The AEDPA requires a state
prisoner to seek federal habeas corpus relief within one year after
the state conviction becomes final.   28 U.S.C. § 2244(d)(1)(A).   If
a prisoner's conviction became final before the AEDPA's enactment,
as in Petitioner's case, the prisoner would have a one-year grace
period expiring on April 24, 1997 within which to file a petition.
<u>See</u> <u>Patterson v. Stewart</u>, 251 F.3d 1243, 1246 (9th Cir. 2001)
(holding that Fed. R. Civ. P. 6(a) governs the calculation of the
AEDPA's one-year grace period, such that the grace period would
expire on April 24, 1997, not April 23, 1997).   The AEDPA's one-
year statute of limitations is strictly applied; a petitioner who
takes advantage of a longer state statute of limitations in
exhausting state remedies will be barred from seeking federal
relief.   <u>See</u> <u>Ferguson v. Palmateer</u>, 321 F.3d 820, 823 (9th Cir.
2003) (holding that "section 2244(d)(1) is not a per se violation

of the Suspension Clause" because the "AEDPA's one-year statute of limitations, even if in tension with a longer state statute of limitations, does not render federal habeas an inadequate or ineffective remedy.").

There are two statutory bases relevant to this case under which the AEDPA's limitations period may be tolled or delayed. First, the AEDPA's one-year limitations period is tolled by statute during the pendency of properly filed state petitions challenging the judgment or claim at issue.  28 U.S.C. § 2244(d)(2); Patterson, 251 F.3d at 1247 (holding that pendency of properly filed state petition statutory tolled the one-year grace period for filing of federal petition challenging pre-AEDPA conviction).  Second, the AEDPA's one-year limitations period does not begin to run until "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."  28 U.S.C. § 2244(d)(1)(D).

In addition to these statutory bases, equitable tolling of the limitations period may also be appropriate where "extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time."  Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999).

Petitioner argues that this Petition should be found timely based on sections 2244(d)(2) and 2244(d)(1)(D) as well as principles of equitable tolling.  For the reasons below, as well as the reasons set forth in the Magistrate Judge's R&R (doc. # 15), the Court finds that neither of the statutory or equitable bases upon which Petitioner relies are sufficient to overcome the conclusion that Petitioner's claims are barred by the AEDPA's one-

1  year statute of limitations.  <u>See</u> 28 U.S.C. § 2244(d).

2      **A. Statutory Bases to Toll or Delay the Limitations Period**

3      Petitioner raises the following statutory bases to toll or

4  delay the limitations period: (1) his one-year grace period for

5  filing his federal petition should be tolled from October 15, 1996

6  until January 8, 2002, the period during which he contends his

7  second Petition for Post-Conviction Relief was pending in the state

8  court, <u>see</u> § 2244(d)(2), and (2) with respect to his claim of

9  ineffective assistance of trial counsel based on counsel's failure

10  to call a potential defense witness, the one-year limitations

11  period did not begin to run until November 30, 1998, the date on

12  which he claims the factual predicate of that claim was discovered

13  by his private investigator, <u>see</u> § 2244(d)(1)(D).  Reply (doc. #

14  11) at 2-4, 7; Objections (doc. # 23) at 3-8.

15      **1. Pendency of Properly Filed State Petition**

16      Petitioner states that Braun, who was retained as post-

17  conviction counsel on September 30, 1996, met with him on October

18  10, 1996 to obtain an executed Notice of Post-Conviction Relief,

19  which Braun subsequently delivered to his secretary for mailing to

20  the state court.  Reply (doc. # 11), Ex. 3 ¶¶ 3-5.  Petitioner

21  maintains that Braun "caused [the notice] to be mailed to the

22  [Superior Court of Arizona for Yavapai County]" on October 10, 1996

23  and, therefore, the notice should be deemed to have been received

24  by the court on or about October 15, 1996.  <u>See</u> <u>id.</u> ¶ 8.  Thus, for

25  purposes of tolling under section 2244(d)(2), Petitioner contends

26  that he had a properly filed state petition pending from October

27  15, 1996 to January 8, 2002 such that the present Petition, filed

28  July 11, 2002, would be timely by six days.

Petitioner's argument relies in part on the common law mailbox rule that the "proper and timely mailing of a document raises a rebuttable presumption that it is received by the addressee."[4] Anderson v. United States, 966 F.2d 487, 491 (9th Cir. 1992); Reply (doc. # 11) at 4.  To raise this presumption, the proponent must show "direct proof of a timely postmark."  Anderson, 966 F.2d at 491.  For example, in an Eight Circuit decision discussed with approval by the Ninth Circuit in Anderson, the court held that this requirement had been met where the proponent "testified that he saw the postal clerk 'weigh the envelope, put postage on it, cancel it, and put it into the appropriate bundle of outgoing mail.'" Id. (quoting Wood v. Comm'r, 909 F.2d 1155, 1157 (8th Cir. 1990)).

In the present case, Petitioner has not produced any proof sufficient to raise the presumption that the notice of his second petition was received by the court.  His attorney states in his affidavit that he obtained an executed notice from Petitioner, which he subsequently gave to his secretary.  There is no proof, however, that the secretary followed through by mailing the notice to the court.  Absent such evidence, the simple assertion that Braun's actions "caused [the notice] to be mailed," does not constitute proof of a timely mailing.  Petitioner suggests that this critical evidentiary gap can be bridged by affording deference

---

[4]   Petitioner suggests that the prison mailbox rule may also apply.  See Objections (doc. # 23) at 5-6.  The prison mailbox rule, under which a petition is deemed filed at the moment it is delivered to prison officials for forwarding to the court clerk, only applies to filings by pro se petitioners.  See Houston v. Lack, 487 U.S. 266, 276 (1988); Patterson v. Stewart, 251 F.3d 1243, 1245 n.2 (9th Cir. 2001).  In this case, Petitioner was represented by counsel in connection with his post-conviction proceedings and, therefore, the prison mailbox rule does not apply.

1   to Braun as an officer of the court.  This adds nothing to the

2   analysis because Braun's statements, even if true, do not prove

3   that the notice was mailed by his secretary.  Without proof of the

4   antecedent fact of the Notice's mailing, there can be no

5   presumption that it was received by the court.

6          Alternatively, Petitioner points out that, under the post-

7   conviction rules in effect in 1996, the filing of a notice was

8   required to initiate post-conviction proceedings.  Reply (doc. #

9   11) at 2; Ariz. R. Crim. P. 32.4(a) (West 1996) ("A proceeding is

10  commenced by timely filing a notice of post-conviction relief with

11  the court in which the conviction occurred.").  Thus, Petitioner

12  suggests that the state court's cognizance of his second Petition

13  for Post-Conviction Relief is implicit proof that the requisite

14  notice had been filed-- this notwithstanding the absence of any

15  court record of such filing.  Id.; Objections (doc. # 23) at 5

16  ("The very fact that the trial court allowed counsel to file a

17  substantive petition in 1998 presupposes that timely 'Notice' was

18  filed.").  Petitioner argues that had the notice not been received

19  "the trial court surely would have said so" in its order denying

20  relief.  Objections (doc. # 23) at 6.

21         This inferential line of argument is only valid if the court

22  relied upon the 1996 post-conviction rules.  See Ariz. R. Crim. P.

23  32.4(a) (West 1996); Isley v. Ariz. Dep't of Corr., 383 F.3d 1054,

24  1055 (9th Cir. 2004).  However, it is clear from the first

25  paragraph of the court's order that the 1996 rules were not

26  applied.  See Answer (doc. # 7), Ex. H at 1.  Instead, the court

27  applied the post-conviction rules in effect at the time of

28  Petitioner's conviction which, unlike the 1996 rules, did not

1  require the filing of a notice to initiate proceedings.[5]  <u>See id.</u>

2  As such, it would be a fallacious inference to construe the order

3  as tacitly acknowledging that a notice had previously been filed.

4      Finally, Petitioner has requested an evidentiary hearing

5  wherein the clerk of the Superior Court of Arizona in Yavapai

6  County would be called to testify about the record keeping in his

7  case.  Reply (doc. # 11) at 4.  The need for such a hearing is

8  premised on Braun's allegation that his representation of

9  Petitioner was "plagued" by the court's "routine failure to timely

10  file and/or return conformation copies of motions filed on

11  [Petitioner's] behalf."  <u>Reply</u> (doc. # 11), Ex. 3 ¶ 6.  Braun

12  suggests that the only possible explanation for the lack of a court

13  record reflecting that a notice had been filed is that the notice

14  must have been "misplaced, misfiled, or lost" by the court.  <u>Id.</u> ¶

15  7.  Because of the conspicuous lack of evidence that his secretary

16  filed the notice, this Court cannot accept the characterizations

17  _____

18      [5]  In rejecting the State's assertion that the petition was untimely, the judge stressed that the "post-conviction rules in

19  effect <u>at the time of [Petitioner's] conviction</u> allowed him to file a Notice of Post-Conviction Relief at any time." Answer (doc. # 7),

20  Ex. H at 1. (emphasis added).  This conclusion could not have been reached under the 1996 rules and would only have been consistent

21  under the rules in effect either in 1983, when his conviction and sentence for first-degree murder became final, or in 1985, when his

22  sentence for the second-degree murder became final.  <u>Compare</u> Ariz. R. Crim. P. 32.4(a) (West 1983) ("A petition may be filed at any time

23  after entry of judgment and sentence.") <u>and</u> Ariz. R. Crim. P. 32.4(a) (West 1985) (same) <u>with</u> Ariz. R. Crim. P. 32.4(a) (West 1996) ("In a

24  non-capital case, the notice must be filed within ninety days of the entry of judgment and sentence . . . .").  Moreover, neither the 1983

25  rules nor the 1985 rules required the filing of a "notice" to initiate post-conviction proceedings.  <u>Compare</u> Ariz. R. Crim. P.

26  32.4(a) (West 1983) ("A proceeding is commenced by filing a petition . . . .") <u>and</u> Ariz. R. Crim. P. 32.4(a) (West 1985) (same) <u>with</u> Ariz.

27  R. Crim. P. 32.4(a) (West 1996) ("A proceeding is commenced by timely filing a notice of post-conviction relief . . . .").

28

and conclusions drawn in Braun's affidavit as raising a colorable argument for an evidentiary hearing concerning the state court's record keeping.

For purposes of tolling under section 2244(d)(2), the Court finds that Petitioner had a properly filed petition pending in state court from October 29, 1998 until January 8, 2002.

### 2. Newly Discovered Facts

In Ground Two of the Petition, Petitioner asserts that trial counsel was ineffective for failing to subpoena a crucial defense witness, Mary Ann Jordan.  Pet. (doc. # 1) at 6.  Petitioner contends that the statute of limitations did not begin to run on this claim until November 30, 1998, claiming that under section 2244(d)(1)(D) this was the earliest date he could have discovered the factual predicate of this claim through the exercise of due diligence.  Reply (doc. # 11) at 7.  For the stated reasons below, the Court finds that Petitioner knew the factual predicate of this claim since the time of his trial, making the present Petition untimely.  Alternatively, the Court notes that the claim would also be denied on its merits under section 2254(d).

### a. 28 U.S.C. § 2244(d)(1)(D)

On November 30, 1998, a private investigator hired in connection with Petitioner's second state petition discovered that the prosecutor had previously represented Jordan in an unrelated matter and thereafter maintained a personal relationship with her. Reply (doc. # 11) at 7; Objections (doc. # 23) at 6-8; Errata (doc. # 24), Ex. 1 at 1,4.  Thus, Petitioner contends that under section 2244(d)(1)(D) the statute of limitations clock would have begun ticking on November 30, 1998, but remained tolled under section

1   2244(d)(2) during the pendency of his state petition until January

2   8, 2002, making his ineffective assistance claim timely by

3   approximately six months.  Reply (doc. # 11) at 7; Objections (doc.

4   # 23) at 6-8.

5       To better appreciate Petitioner's argument, it is necessary

6   first to review the requirements of a successful Sixth Amendment

7   claim for ineffective assistance of counsel.  The Supreme Court has

8   stated that a meritorious claim of ineffective assistance requires

9   the petitioner to demonstrate (1) that counsel's representation

10  fell below an objective standard of reasonableness, and (2) the

11  deficient performance actually prejudiced the defense.  Strickland

12  v. Washington, 466 U.S. 668, 687-91 (1984); Hasan v. Galaza, 254

13  F.3d 1150, 1154 (9th Cir. 2001).  Petitioner likens this case to

14  Hasan, in which the Ninth Circuit held that the limitations period

15  does not begin to run on an ineffective assistance claim until the

16  petitioner discovers the factual predicate for both prongs of the

17  Strickland test.  See Hasan, 254 F.3d at 1155.

18      In Hasan, the petitioner filed a federal habeas petition on

19  June 1, 1998 claiming that counsel had been ineffective for failing

20  to investigate, or to demand inquiry into, possible juror

21  misconduct.  Id. at 1152.  Because the petition was filed after the

22  one-year grace period allowed by the AEDPA, Warden Galaza moved to

23  dismiss Hasan's petition as untimely under 28 U.S.C. § 2244(d)(1).[6]

24  In response, Hasan contended that the limitations period did not

25

26  ─────────────

27      [6]  Like Petitioner in this case, Hasan's conviction became final
    prior to the enactment of the AEDPA, allowing him until April 24,
    1997 to file his federal habeas petition.  See Hasan, 254 F.3d at
28  1151.

1   begin to run with respect to his ineffective assistance claim until

2   December 1996.  Id. at 1153.  It was at this time, Hasan asserted,

3   that he learned the facts that would have been revealed by an

4   investigation into the juror misconduct-- that a prosecution

5   witness in another case, who had reportedly slipped a surreptitious

6   note to a juror in Hasan's case, was at the time romantically

7   involved with a prosecution witness testifying against Hasan.  Id.

8        On April 22, 1997, Hasan filed his state habeas petition

9   raising an ineffective assistance claim based on the information he

10  learned in December 1996 and, two days later, obtained an affidavit

11  from the witness in his case verifying that information.[7]  See id.

12  at 1152-53.  His state petition was ultimately denied by the

13  California Supreme Court on April 29, 1998, approximately one month

14  prior to the filing of his federal habeas petition.  Id. at 1151-

15  52.  Thus, Hasan argued that under section 2244(d)(1)(D) the

16  limitations period did not begin to run until December 1996--

17  rather than the AEDPA's April 24, 1996 effective date-- and was

18  tolled during the pendency of his state petition under section

19  2244(d)(2), making his federal petition timely by approximately

20  seven months.  See id. at 1153, 1155 n.4.  The Ninth Circuit did

21

22       [7]  The Ninth Circuit opinion does not expressly indicate which
     claims were raised in Hasan's state petition.  However, the fact that
23   Hasan's first federal petition was dismissed for failure to exhaust
     state remedies, while the second petition was allowed to proceed on
24   the basis that state remedies were exhausted, strongly suggests that
     the ineffective assistance claim was raised and decided on the merits
25   in Hasan's state petition.  See Hasan, 254 F.3d at 1152-53.
     Moreover, the fact that Hasan filed the state petition approximately
26   four months after his December 1996 discovery, and obtained an
     affidavit confirming that information only two days after the filing
27   of his state petition is further proof that he pursued the
     ineffective assistance claim in his state petition.  See id.
28

not adopt Hasan's version of when the limitations clock began

ticking.  See id.  Instead, the panel remanded to the district

court to determine if Hasan could have, with the exercise of due

diligence, discovered the factual predicate for both of the

Strickland elements of his ineffective assistance claim at any time

before May 24, 1996.  Id.  If so, Hasan's claim would still have

been untimely under section 2244(d)(1)(D).  See id.

     The present case is distinguishable from Hasan in that Hasan

claimed to have discovered the basis of his ineffective assistance

claim in December 1996, well before filing his state petition on

April 22, 1997.  Petitioner, on the other hand, makes the unusual

argument of having discovered the factual predicate of his claim on

November 30, 1998, one month after he had already presented that

claim to the state court in his second Petition for Post-Conviction

Relief filed on October 29, 1998.  Answer (doc. # 7), Ex. F at 13-

14, 23-24; Answer (doc. # 7), Ex. H at 3-4, 6.  The information

gleaned by Petitioner's private investigator may have fleshed out

the details of the claim he had already presented.  However, it

cannot be said that the information obtained on November 30, 1998,

simply by sharpening the facts upon which the issues in his case

would be decided, actually established the factual predicate of the

claim he already knew to raise and investigate.  Because

Petitioner's ineffective assistance claim had already been

presented to the state court, and was subsequently decided on the

merits, it would be incongruous to hold that the factual predicate

of the identical claim in Petitioner's federal petition became

known at a later date based on the discovery obtained during the

pendency of his state petition.  As such, Petitioner cannot

1  credibly deny having understood the factual predicate of his

2  ineffective assistance claim at some time prior to raising that

3  claim in his second state petition.

4      The question remains how long before the filing of his second

5  state petition could Petitioner, through the exercise of due

6  diligence, have discovered the factual predicate of his ineffective

7  assistance claim.  In this regard, Petitioner takes exception to

8  the Magistrate Judge's conclusion that had he sought collateral

9  relief prior to April 24, 1997 "he could have obtained the same

10 'disclosure' that the prosecutor maintained a relationship with a

11 potential trial witness."  R&R (doc. # 15) at 10; Objections (doc.

12 # 23) at 7.  However, the fact that Petitioner learned of the

13 prosecutor's relationship with Jordan while investigating his

14 already pending state petition demonstrates that knowledge of that

15 relationship was not a factual predicate of his claim.

16     For all that appears, Petitioner should have perceived the

17 basis of his ineffective assistance claim as early as trial when

18 counsel told him "that he and [the prosecutor] had discussed Jordan

19 and that they had decided that she 'had been through enough,' [and]

20 therefore he would not call her as a witness at trial."  Errata

21 (doc. # 24) at 2 n.1; accord Answer (doc. # 7), Ex. F at 13-14, 23-

22 24; Answer (doc. # 7), Ex. H at 3-4, 6.  At that time, Petitioner

23 would have been aware of the allegedly deficient performance of

24 counsel based on his decision not to call Jordan as a witness.

25 Moreover, Petitioner would have understood the potential for

26 prejudice stemming from the absence of Jordan's testimony as well

27 as the appearance of collusion based on trial counsel's admission

28 that his decision not to call Jordan was reached in consultation

1  with the prosecutor.  <u>See</u> Answer (doc. # 7), Ex. F at 13-14, 23-24.

2  Thus, the facts known at trial were sufficient to place Petitioner

3  on notice as to both <u>Strickland</u> elements of his ineffective

4  assistance claim.  <u>See</u> <u>Hasan</u>, 254 F.3d at 1155.[8]

5      In sum, Petitioner has failed to establish any basis under

6  section 2244(d)(1)(D) to find that the statute began to run on his

7  claim at any time after April 24, 1996.  Furthermore, because he

8  had allowed the one-year limitations period to elapse before filing

9  his second state petition on October 29, 1998, his federal petition

10  is time-barred under the AEDPA.  <u>See</u> <u>Ferguson</u>, 321 F.3d at 823.

11      **b. 28 U.S.C. § 2254(d)**

12      Petitioner's ineffective assistance claim, even if not time-

13  barred, would be denied on the merits.  Because this claim was

14  adjudicated on the merits by the state court, the AEDPA prohibits

15  this Court from granting relief unless the state court's

16  adjudication of Petitioner's claim:

17          (1) resulted in a decision that was contrary to, or
            involved an unreasonable application of, clearly
18          established Federal law, as determined by the Supreme
            Court of the United States; or
19
            (2) resulted in a decision that was based on an
20          unreasonable determination of the facts in light of the
            evidence presented in the State court proceeding.
21

22  28 U.S.C. § 2254(d).

23      For purposes of section 2254(d)(1), "the rule set forth in

24  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

25      [8] Even if additional facts were required to understand the basis
    of his ineffective assistance claim, Petitioner fails to demonstrate
26  any diligence in discovering those facts during the enormous lapse in
    time between his trial in 1981 and his hiring of the private
27  investigator in 1998.  Instead, he has relied only on the argument
    that the information discovered in November 1998 established the
28  factual predicate of his claim.

1    <u>Strickland</u> qualifies as 'clearly established Federal law, as

2    determined by the Supreme Court of the United States.'"   <u>Williams</u>,

3    529 U.S. at 391.   Under the <u>Strickland</u> test for ineffective

4    assistance of counsel, the petitioner must show (1) that counsel's

5    representation fell below an objective standard of reasonableness,

6    and (2) the deficient performance actually prejudiced the defense.

7    <u>Strickland</u>, 466 U.S. at 687-91; <u>Hasan</u>, 254 F.3d at 1154.

8         In this case, Petitioner's claim of ineffective assistance

9    based on trial counsel's failure to call Jordan as a witness was

10   adjudicated on the merits in the state court.[9]   The order denying

11   Petitioner's second Petition for Post-Conviction Relief squarely

12   addresses the issue of defense counsel's failure to call Jordan as

13   well as Petitioner's "allegation of collusion between the

14   prosecutor and defense counsel."   Answer (doc. # 7), Ex. H at 3-4,

15   6.   Focusing on Jordan's prospective testimony, the court noted

16   that the testimony anticipated by Petitioner would have been

17   inconsistent with an affidavit already supplied by Jordan and, in

18   any event, would not have been material or relevant to the defenses

19   raised by Petitioner at his trial.   <u>Id.</u> at 4.   In addition, the

20   court concluded that Petitioner had failed to establish his

21

22        [9]   The court held that Petitioner's claims of ineffective
     assistance with respect to trial counsel were procedurally defaulted
23   due to Petitioner's failure to assert these claims on direct appeal
     or in his first Petition for Post-Conviction Relief.   Answer (doc. #
24   7, Ex. H at 2.   Claims found by a state court to be procedurally
     defaulted, as in the present case, are "adjudicated on the merits"
25   for purposes of section 2254(d).   <u>See</u> <u>Medellin v. Dretke</u>, 544 U.S.
     660, ___, 125 S. Ct. 2088, 2091 161 L. Ed. 2d 982, 988 (2005).   In
26   this case, the state court not only found the claims procedurally
     defaulted, but went on to analyze the claims on their merits to
27   determine whether appellate counsel had rendered ineffective
     assistance by failing to assert the claims regarding trial counsel.
28

1   allegation of collusion between the prosecutor and defense counsel.

2   Id. at 6.  Under the circumstances, the court's conclusions that

3   counsel was not incompetent and that Petitioner was not prejudiced

4   by counsel's conduct were not contrary to, or an unreasonable

5   application of, Strickland.  Therefore, even if not time-barred,

6   Petitioner's claim of ineffective assistance would be denied on the

7   merits pursuant to section 2254(d).

8       **2. Equitable Tolling**

9       Petitioner contends that the AEDPA's statute of limitations

10  should be equitably tolled because (1) post-conviction counsel led

11  him to believe that a Notice of Post-Conviction Relief had been

12  filed in 1996 and (2) ADOC's replacement of its prison law

13  libraries with contract paralegals constituted an impediment to the

14  filing of his federal application created by State action in

15  violation of the Constitution of the United States.  For the

16  reasons set forth by the Magistrate Judge, see R&R (doc. # 15) at

17  10-13, as well as the reasons explained more fully below, the Court

18  rejects both arguments as unmeritorious.

19      In a recent case, the Supreme Court deliberately avoided

20  deciding whether the AEDPA's statute of limitations may be

21  equitably tolled.  Pace v. DiGuglielmo, 544 U.S. 408, ___, 125 S.

22  Ct. 1807, 1815 n.8, 161 L. Ed. 2d 669, 679 n.8 (2005) (Rehnquist,

23  C.J.).  However, because the parties had argued on the basis that

24  it could, the Court assumed that equitable tolling applies and

25  observed that the proponent must show "(1) that he has been

26  pursuing his rights diligently, and (2) that some extraordinary

27  circumstance stood in his way."  Id. at 1814, 1815 n.8 (citing

28  Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990)); accord

Brambles v. Duncan, 412 F.3d 1066, 1069-70 (9th Cir. 2005) ("The one-year statute of limitations prescribed in the AEDPA may be equitably tolled if 'extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time.'") (quoting Miles, 187 F.3d at 1107).

In Pace, the Supreme Court affirmed the decision of the Third Circuit to reverse the district court's allowance of equitable tolling, finding that the petitioner had not been diligent in pursuing his claims. See Pace, 125 S. Ct. at 1815. The Court noted that although the petitioner's claims were available in 1986 and 1991, he "waited years, without any valid justification" to assert those claims in an untimely state petition. See id. at 1810, 1815. Because the petitioner "[sat] on his rights for years before he filed his [state] petition" and "also sat on them for five more months after his [state] proceedings became final before deciding to seek relief in federal court," the Court concluded that the petitioner's lack of diligence precluded equitable relief. Id. at 1815; see also McQuiddy v. Ware, 87 U.S. (20 Wall.) 14, 19 (1874) ("Equity always refuses to interfere where there has been gross laches in the prosecution of rights").

The instant case presents even longer delays than those in Pace. Like Pace, Petitioner filed his second state petition long after the claims asserted had been available to him. See Pace, 125 S. Ct. at 1810. Petitioner's claims, including his claim of ineffective assistance based on counsel's failure to call Jordan, were available to him as early as 1983 and 1985, the years in which his sentences became final for the first-degree murder and second-degree murder convictions. Even accepting Petitioner's account of

1   how his Notice of Post Conviction Relief was filed in 1996, there

2   is no explanation for the delay of more than ten years before his

3   decision to pursue his claims.  Petitioner not only sat on his

4   rights for ten years before deciding to seek relief in state court,

5   but sat on them for six more months after his state post-conviction

6   proceedings became final before deciding to seek relief in federal

7   court.  The Supreme Court found Pace ineligible for equitable

8   tolling based on five years of delay in filing his state petition,

9   followed by five months of delay in filing his federal petition.

10  Id. at 1815.  By the same principle, this Court finds that

11  Petitioner's unexplained and lengthier delay constitutes gross

12  laches and exhibits a lack of diligence that makes equitable

13  tolling inappropriate in this case.

14  **IV.   CONCLUSION**

15       The Court adopts the reasoning and conclusions of the R&R

16  (doc. # 15) in their entirety.  For those reasons, as well as the

17  reasons discussed in this Order, the Court finds that Petitioner's

18  claims are barred by the AEDPA's statute of limitations, that

19  Petitioner is not entitled to equitable tolling, and neither

20  section 2244(d)(2) nor section 2244(d)(1)(D) provides a basis to

21  find any of his claims timely.

22       **IT IS THEREFORE ORDERED** that the Magistrate Judge's Report and

23  Recommendation (doc. # 15) is ADOPTED.

24  . . .

25

26

27

28

1        IT IS FURTHER ORDERED that Petitioner's Petition for Writ of

2   Habeas Corpus (doc. # 1) is DENIED.

3        DATED this 25th day of July, 2006.

4

5

6        _____

7                    Robert C. Broomfield
                     Senior United States District Judge

8

9   Copies to counsel of record

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28